UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                          Crim. No. 04 cr 10198 MLW

JOHN MEHIA

## MEMORANDUM REGARDING MOTION TO SUPPRESS

### INTRODUCTION

As an initial matter, Mr. Mehia moves to joins in the memorandum submitted in support of Mr. Ramos' Motion to Suppress, as the facts relating to the stop and seizure are identical in both cases, and counsel for Mr. Ramos has submitted a comprehensive 45 page memorandum of law. Separately addressing the issues ably covered by counsel for Mr. Ramos would be a needless duplication of effort and resources, and would be a waste of Judicial Resources.

Mr. Mehia submits this separate memorandum to address the issue of "standing," or whether he had a legitimate expectation of privacy in the van.

### ARGUMENT

1.  <u>Mr. Mehia has 'standing' to contest his seizure because he was actually unlawfully seized by law enforcement at the time of the stop, and that seizure was done without any reasonable suspicion, based upon articulable facts, of criminal wrongdoing</u>.

While the facts and legal situation in John Mehia's case are largely identical to the circumstances regarding Mr. Ramos, the two defendants are in a legally distinct position by reason that Mr. Ramos was in the driver's seat of the vehicle, where Mr. Mehia was in the

passenger seat.[1] This brings into the issue of "standing," which is more properly framed as whether Mr. Mehia had a legitimate and reasonable expectation of privacy in the parked van. See e.g. Minnesota v. Carter, 525 U.S. 83, 88 (1998). In this instance, the Court should determine that Mr. Mehia had a reasonable expectation of privacy in the van.

The analysis of standing involves "a legitimate expectation of privacy in the premises he was using and therefore [he] could claim the protection of the Fourth Amendment with respect to a governmental invasion of those premises, even though his "interest" in those premises might not have been a recognized property interest at common law. See Rakas v. Illinois, 439 U.S. 128, 143 (1978), citing Jones v. United States, 362 U.S. 257, 261 (1960).

The very fact which complicates the main fourth amendment issues in this case also distinguishes it from motor vehicle cases in which the passenger may not have a reasonable expectation of privacy in a motor vehicle. See e.g. Rakas, 439 U.S. 128, 143 (1978). Certainly the passenger in a parked motor vehicle may expect that law enforcement officers will not walk up to his door and open it with no consent, reason or provocation. Compare Md. v. Wilson, 519 U.S. 408, 414-415 (1997) (holding that a law enforcement officer may order a passenger out of a car subsequent to a lawful traffic stop). There is no question that under the circumstances of this case, not only did Mehia have a legitimate expectation of privacy in the van, but he had legitimate authority to use it.

While Mr. Mehia was seated in the vehicle which was not in motion and was not seized by action of "blue lights" or other show of authority, Officer O'Hara initiated contact by opening

---

[1] It bears noting, however, that the van was never seen driving, so the distinction between "driver" and "passenger" is not entirely apposite in this case.

the passenger door of the vehicle where Mr. Mehia was seated. Transcr. at 68. At this point the vehicle, and Mr. Mehia, became seized for purposes of the fourth amendment, as they were no longer free to leave the area. See generally Terry v. Ohio, 392 U.S. 1, 19 (1968). As he personally was seized, and his personal liberty restricted, his fourth amendment liberty interest was implicated. See Id.

In the context of a traffic stop, the liberty interest of a passenger in a vehicle is somewhat diminished, as the seizure is "a necessary by-product of the lawful detention of the driver... the passengers [are not] seized at the time the car was pulled over, any more than a traffic jam caused by construction or other state-imposed delay not directed at a particular individual constitutes a seizure of that person." Md. v. Wilson, 519 U.S. 408, 420 (1997). However, this seizure, occasioned by the opening of the passenger door, is divorced from any lawful seizure, and was not based on reasonable suspicion of Mehia's wrongdoing. In fact, Officer O'Hara's purported justification for opening the door was a fear for his safety during a 'consensual' police-citizen encounter. Transcr. at 68 ("I felt I was at risk just being directly on the side of the van and I couldn't see the passenger's hands as his hands appeared to be lower than the level of the door. So I felt it was - - it would behoove me to open the door just to be able to see his hands"). Several Courts have held that concern for an officer's safety is not sufficient for an officer to conduct a "Terry" stop and an officer must have reasonable suspicion of criminal activity prior to making the weapons search. See e.g. U.S. v. Burton, 228 F. 3d 524, 528-9 (4th Cir. 2000); U.S. v. Gray, 213 F.3d 998 (8th Cir. 2000). Mehia was certainly not objectively "free to go" where Officer O'Hara, due to his concern about weapons, opened the van door which would have been Mehia's only means of egress. See Terry, 392 U.S. at 19 (an officer may seize a citizen by

"physical force or show of authority").

Even assuming for the sake of this Motion that the vehicle were stopped or seized with reasonable suspicion, Mr. Mehia has "standing" as the passenger in a car to challenge his own seizure. "Once the police halt a vehicle on the highway, both the driver and the passengers are in a practical sense subject to the officers' authority...Thus, any one of them may challenge his own detention regardless of whether he was the immediate target of the investigation or whether he had a privacy interest in the vehicle itself." United States v. Sowers, 136 F.3d 24, 27 (1st Cir. 1998), citations omitted.

2.  As a result of the unlawful seizure, Mr. Mehia's statements at the police station must be suppressed as fruits of the poisonous tree.

After Mehia's arrest, he first refused to waive his Miranda rights and requested a lawyer. Shortly thereafter, he signed a waiver of his Miranda rights and gave a statement to the police. Mehia moves to suppress these statements on the basis that they were obtained in violation of his Fourth Amendment rights, and are "fruit of the poisonous tree" of the his illegal seizure.

Evidence which is obtained because of an unlawful search or seizure is not to be used against a person. Further, any "fruits of the poisonous tree" must also be suppressed unless the taint of the unlawful stop has been sufficiently attenuated. See generally Brown v. Illinois, 422 U.S. 590, 603-4 (1975).

In Mehia's case, the statements made at the police station differ significantly from many attenuation cases because, absent the illegal search and seizure, the government would never have been investigating Mehia. Cf. United States v. Monti, 557 F.2d 899 (1st Cir. 1997) (where there was no issue of illegal arrest and the illegal statements were made after an investigation was

commenced by the government), United States v. Johnson, 121 F.3d 1141 (8th Cir. 1997) (an arrest warrant was issued and the allegedly illegal arrest and procedure followed the execution of the warrant); United States v. Ayers, 725 F.2d 806 (1st Cir. 1984) (arresting officers had probable cause to make the warrantless arrest from which any statements flowed).

In this case, the illegal detention and seizure resulted from, for lack of a better term, a traffic stop. There was no prior information about Mehia, and no suspicion of illegality. Mehia was not under prior investigation for any crime. If the illegal stop had not taken place, there would have been no evidence of Mehia's involvement. "[W]ell-established precedent requires suppression of [a] confession unless that confession was "an act of free will [sufficient] to purge the primary taint of the unlawful invasion." Wong Sun v. United States, 371 U.S. 471, 486 (1963). Demonstrating such purgation is, of course, a function of circumstantial evidence, with the burden of persuasion on the state. See Brown v. Illinois, 422 U.S. 590, 601-602 (1975) . Relevant considerations include observance of Miranda, "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrancy of the official misconduct." Kaupp v. Texas, 538 U.S. 626, 632-633 (2003) (citations omitted). "Important to an analysis of whether there is sufficient attenuation is whether the arrestee confessed without any intervening event of significance. ("No intervening events broke the connection between petitioner's illegal detention and his confession")." Taylor v. Alabama, 457 U.S. 687 (1982) (citations omitted).

In this case, there is little if any attenuation between the stop and the statements made by Mehia. They were closely related temporally, there were no meaningful intervening circumstances, and the violation of Mehia's Fourth Amendment rights was clear. "In order for

the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' Wong Sun thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment." Brown v. Ill., 422 U.S. 590, 601-602 (1975), citing Wong Sun v. United States, 371 U.S. 471, 486 (1963).

Further, the fact that Miranda warnings were given to Mehia, and his voluntary waiver of those rights, does not, by itself, cure the taint of the illegal stop.  "Arrests made without warrant or without probable cause, for questioning or "investigation," would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving Miranda warnings...Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a "cure-all," and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to "a form of words." Brown v. Ill., 422 U.S. 590, 602-603 (1975).

In this case, there can be no attenuation because there was no possible way for these statements to be obtained other than the direct unlawful seizure of the parties.  The fact that Mehia agreed to give statements thereafter does not act to attenuate the taint.  Any position otherwise would essentially violate the holding of Brown v. Ill., 422 U.S. 590 (1975), that a Miranda warning does not, without more, cure the taint from an illegal seizure. As an example, a subsequent confession was suppressed in United States v. Lee, 699 F.2d 466, 468 (9th Cir. 1982), where "the second confession, a virtual repetition of the first, was obtained less than 24 hours after the first confession was elicited without Miranda warnings."

## CONCLUSION

As a result of the unlawful seizure of Mr. Mehia, his arrest and the fruits thereof, namely statements made to law enforcement immediately after his arrest, must be suppressed. The defendant hereby joins in the supplemental memorandum filed on behalf of the co-defendant Mr. Ramos.

Respectfully Submitted,
By his Attorney

/s/ Melvin Norris

Melvin Norris
260 Boston Post Road, Suite 9
Wayland, MA  01778
(508) 358-3305

April 6, 2007

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed this date through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent this date to those indicated as non-registered participants.

   /s/ Melvin Norris
MELVIN NORRIS